502 F.Supp. 658 (1980)
Pedro DANTUS, Robert L. Crane, and Shirley Munoz-Hernandez, Plaintiffs,
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF DENVER, and The Public Trustee of the City and County of Denver, State of Colorado, Defendants.
Civ. A. No. 80-Z-920.
United States District Court, D. Colorado.
December 11, 1980.
*659 John Head; Head, Moye, Carver & Ray, Denver, Colo., for plaintiffs.
William Ross; Sweeney & Ross, P. C., Lakewood, Colo., for defendants.

MEMORANDUM OPINION AND ORDER
WEINSHIENK, District Judge.
Plaintiffs initially brought this action in state court requesting a declaratory judgment that § 38-30-165, C.R.S. 1973, as amended,[1] applies to a federal savings and loan association. Pursuant to 28 U.S.C. § 1441(a), defendant First Federal Savings and Loan Association of Denver (First Federal) removed the case to this Court. Subject matter jurisdiction exists under 28 U.S.C. § 1331(a) and under 28 U.S.C. § 1337. Defendant Public Trustee is a nominal party and does not have any substantive interest in these proceedings.
The matter is now before the Court on the parties' Cross Motions for Summary Judgment. Briefs have been filed by the parties. In addition, the Federal Home Loan Bank Board and the Savings and Loan League of Colorado, Inc., have filed amici curiae briefs. The parties have also filed a stipulated statement of facts which indicates the following: First Federal is a federally chartered savings and loan association, subject to regulations promulgated by the Federal Home Loan Bank Board, and is generally engaged in the practice of lending money which sums are secured by Colorado real estate. The plaintiffs Crane and Munoz-Hernandez executed a deed of trust with First Federal as the lender; the deed contained a "due-on-sale" clause. Without prior written approval of defendant First Federal, Crane and Munoz-Hernandez conveyed the property to plaintiff Dantus by general warranty deed. Defendant consented to the transfer of the property on condition that Dantus would agree to pay an interest rate on the remaining indebtedness due in an amount greater than a 1% increase in the previous contract rate. When Dantus refused to agree to the increased interest rate, First Federal exercised its rights under the due-on-sale clause, declared the note in default, and proceeded to commence foreclosure proceedings. This Court issued a preliminary injunction against the foreclosure proceedings.
Plaintiffs contend that the state statutory 1% limitation on real estate transfers such as the one described above applies to federal savings and loan associations. Defendant First Federal argues that federal law pre-empts the applicability of § 38-30-165.
*660 Having considered the briefs, the relevant statutory and case law, and the stipulated facts, the Court is now fully informed and prepared to rule on the Motions.

I.
Plaintiffs contend that Congress, by enacting 12 U.S.C. § 1425,[2] subjected the Federal Home Loan Banks and their affiliates to state regulation of interest rate. They urge this Court to find that 12 U.S.C. § 1425 expressly requires defendant to comply with § 38-30-165 because the latter is a law setting a "lawful contract rate of interest" within the meaning of the federal statute. Defendant argues that the pertinent language of 12 U.S.C. § 1425 is limited to state usury statutes and that § 38-30-165 is not a usury statute because it does not set a specific maximum rate of interest.
The legislative history of 12 U.S.C. § 1425 indicates congressional intent to preserve the effectiveness of state usury laws in the regulation of federal savings and loan associations. This policy was expressed in the Conference Report accompanying the 1969 Amendment to § 1425: "When the basic statute creating the Federal home loan bank system was enacted more than 35 years ago, Congress required members of the Federal home loan bank system to comply with state usury laws ...." [1969] U.S.Code Cong. & Ad.News, pp. 1524, 1559 (emphasis added).
Manifestly, § 38-30-165 is not a state usury law. It does not fix a specific maximum interest rate as do usury laws. Rather, it limits the increase on a pre-existing interest rate which a real estate lender may exact upon the assumption of the loan.
Therefore, the Court concludes that 12 U.S.C. § 1425 is inapplicable in this case. In light of this determination, the Court need not consider whether the Automatic Transfer Accounts Act, P.L. 96-161 § 105, 93 Stat. 1233 (1979) pre-empts § 38-30-165 and implicitly repeals 12 U.S.C. § 1425.

II.
Defendant contends that, in exercising its rights under the due-on-sale clause, it is not subject to the limitations of § 38-30-165 because § 5(a) of the Home Owners' Loan Act of 1933, as amended, (HOLA), 12 U.S.C. § 1464(a), and its implementing regulations, pre-empt the state law.
In considering whether state legislation is pre-empted by federal statutes and regulations under the Supremacy Clause, U.S.Const. art. VI, cl. 2, the Court must begin by assuming that the historic police powers of the States are not to be superseded by any federal laws or regulations unless that congressional purpose is clearly shown. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Yet, where the federal regulatory scheme is so comprehensive as to support the inference that there can be no place for state regulation, implicit pre-emption may exist. Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978).
Numerous courts have found that the regulatory authority of the Home Loan Bank Board granted by 12 U.S.C. § 1464(a) is so pervasive in controlling lending practices of federal savings and loan associations that state action is wholly pre-empted. See, e. g., Conference of Federal Savings and Loan Associations v. Stein, 604 F.2d 1256 (9th Cir. 1979), aff'd mem., 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980); Meyers v. Beverly Hills Federal Savings & Loan Association, 499 F.2d 1145 (9th Cir. 1974); Glendale Federal Savings & Loan Assoc. v. Fox, 459 F.Supp. 903 (C.D. Cal.1978); Haugen v. Western Federal Savings and Loan Association of Denver, No. 79CV4680 (Colo.Dist.Ct. June 18, 1980). The Glendale case contains a thorough discussion *661 of the legislative history of the HOLA.
This Court does not have to reach the question of total pre-emption, however. When a state law conflicts with a federal enactment, pre-emption also will be found to the extent of the conflict. This may occur "where compliance with both federal and state regulation is a physical impossibility ...." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1978).
Plaintiffs argue that there is no conflict between the state law and federal regulations at issue because the Colorado statute does not absolutely prohibit due-on-sale clauses. They assert that Colorado law merely limits the amount of increase in the interest rate that can be demanded when the lender invokes the clause. However, a comparison of the two provisions disproves this contention. Section 38-30-165(1)(a) establishes a flat prohibition on the exercise of due-on-sale clauses unless the purchaser is "reasonably determined by the [lender] to be financially incapable of retiring the indebtedness according to its terms." In contrast, 12 C.F.R. § 545.8-3(f), expressly grants federal savings and loan associations the power to include such clauses in their loan instruments. These two provisions are directly in conflict.
Furthermore, § 38-30-165(1)(b) limits the lender's power to request an increase in interest rate upon an assumption to 1%. Federal provisions relating to the exercise of the due-on-sale clause are found in 12 C.F.R. § 545.8-3(g). Subsection (3) permits the savings and loan association to waive its rights by entering into a written agreement with the purchaser that the purchaser's credit is satisfactory and that the interest "... will be payable at a rate the association shall request." Thus, whenever the savings and loan association "requests" a rate which is more than a 1% increase in the existing rate, it is in conflict with the state law but in compliance with federal law.
Because of these conflicts, the federal law and regulations pre-empt the state law. Ray v. Atlantic Richfield Co., supra. This Court holds that the 1% limitation on the increase of interest rates set forth in § 38-30-165 does not apply to federal savings and loan associations. Accordingly, it is
ORDERED that defendant's Motion for Summary Judgment is granted. It is FURTHER ORDERED that plaintiffs' Motion for Summary Judgment is denied. Judgment for dismissal will be entered for the defendants, each party to pay its or his own costs.
NOTES
[1] XX-XX-XXX. Unreasonable restraint on the alienation of property-prohibited practices. (1) Subject to the limitations and exceptions as provided in this section, any person with a security interest in real estate shall not, directly or indirectly:

(a) Accelerate or mature the indebtedness secured by such real estate on account of the sale or transfer of such real estate or on account of the assumption of such indebtedness; except that this paragraph (a) shall not apply if the person to whom the real estate would be sold or transferred is reasonably determined by the person holding the security interest to be financially incapable of retiring the indebtedness according to its terms, based upon standards normally used by persons in the business of making loans on real estate in the same or similar circumstances; or
(b) Increase the interest rate more than one percent per annum above the existing interest rate of the indebtedness or otherwise modify, for the benefit of the holder of the security interest, the terms and conditions of the indebtedness secured by such real estate, on account of the sale or transfer of such real estate or on account of the assumption of such indebtedness; ....
[2] The relevant part of § 1425 reads as follows:

No institution shall be admitted to or retained in membership, or granted the privileges of nonmember borrowers, if the combined total of the amounts paid to it for interest, commission, bonus, discount, premium, and other similar charges, less a proper deduction for all dividends, refunds, and case credits of all kinds, creates an actual net cost to the home owner in excess of the lawful contract rate of interest applicable to such transactions, ....